UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LORI SCHLESSINGER and
BRENDA PIANKO,

       Plaintiffs,

               **MEMORANDUM & ORDER**
   -against-            10 CV 2694(DRH)(ETB)

VALSPAR CORPORATION,

       Defendant.
------------------------------------------------------------X

**APPEARANCES:**

**Lawrence Katz**
Attorney for Plaintiffs
445 Central Avenue, Suite 201
Cedarhurst, NY 11516

**Edelman, Combs, Latturner & Goodwin, LLC**
Attorneys for Plaintiffs
120 S Lasalle St, 18th Floor
Chicago, IL 60603
By: Dan Edelman
   Cathleen M. Combs

**Schiff Hardin LLP**
Attorneys for Defendant
233 S Wacker Drive, Suite 6600
Chicago, IL 60606
By: Paula J. Morency
   David Elliot Jacoby
   Jeannice D. Williams

**HURLEY, Senior District Judge:**

   Plaintiffs, on behalf of themselves and others similarly situated, bring this diversity

action[1] alleging breach of contract and violations of New York's General Business Law ("GBL")

---

[1] The captioned plaintiffs are residents of Nassau County, New York and the Valspar Corporation is incorporated in Delaware with its principal place of business in Minneapolis, Minnesota.

1

§ 349. (Complaint ("Compl.") ¶¶ 33-40.) Defendant moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth below, the motion is granted.

## BACKGROUND

The following factual allegations are taken from the complaint and presumed true for the purposes of this motion.

This dispute arises from defendant's allegedly premature termination of maintenance agreements known as "Guardsman" service contracts.  In order to insure against the possibility of damage to newly purchased furniture, each plaintiff entered into a separate contract with defendant at the time they bought furniture from the Fortunoff Department Store.[2]  According to the agreements, if any damage to plaintiffs' furniture is incurred during the contract period, defendant will endeavor to repair or replace the items.

Contained within those agreements is what plaintiffs term the "store closure provision," which reads as follows.  "If the particular store location where you originally purchased your furniture [ ] has closed, no longer carries Guardsman as a supplier, changed ownership, or has stopped selling new furniture since your purchase, Guardsman will give you a refund of the original purchase price of this Protection Plan." (Compl. ¶ 19.)  At some point after plaintiffs purchased their furniture and entered into the agreements, Fortunoff went bankrupt. (Compl. ¶¶14-15, 20.)  By the time plaintiff Brenda Panko submitted a claim to defendant on April 14, 2010, Fortunoff had gone out of business and the claim was denied. (Compl. ¶¶ 22-23.)

Plaintiffs allege that a New York consumer law, GBL § 395-a, prohibits the inclusion of the store closure provision (compl. ¶¶ 22-23), rendering it "ineffective and not part of the

---

[2] Defendant Valspar Corporation issues and maintains the contracts, which it sells to the consumer through the furniture retailer. (*See* Compl. ¶ 15.)

agreement," (Compl. ¶ 35). Therefore, by denying claims based on that contract provision, defendant breached the agreement. (Compl. ¶ 36.) Plaintiffs further claim that defendant engaged in "deceptive practices," as defined in GBL § 349, by selling maintenance agreements which contain the purportedly illicit store closure provision. (Compl. ¶¶ 38-40.)

This suit is also brought on behalf of two putative classes of individuals with addresses in New York: (1) those "who currently have or will purchase Guardsman furniture protection plans," and (2) those "whose claims under a Guardsman furniture protection program were denied on the ground of the store closure provision at any time [six months prior to the filing of the instant complaint.]" (Compl. ¶¶ 25-26.)  Plaintiffs seek, *inter alia*, an order requiring that all claims denied under the store closure provision be reprocessed, as well as statutory damages in the amount of $50 in for each individual who purchased a Guardsman plan containing the provision.

## DISCUSSION

### I. STANDARD OF REVIEW

#### a. Motion To Dismiss Pursuant To 12(b)(6)

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The Supreme Court has clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. at 562.

Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937 (2009), the Supreme Court provided further guidance, setting a two-pronged approach for courts considering a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (*citing Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a

> defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (*quoting and citing Twombly*, 550 U.S. at 556-57) (internal citations omitted).

In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - - but it has not 'show[n]' - - that the pleader is entitled to relief." *Id.* at 1950.

## II. THERE IS NO PRIVATE RIGHT OF ACTION UNDER N.Y. GEN. BUS. L. § 395-a

At the heart of plaintiffs' claims is the alleged violation of GBL § 395-a ("section 395-a"), which provides in relevant part:

> No maintenance agreement[3] covering parts and/or service shall be terminated at the election of the party providing such parts and/or service during the term of the agreement unless prior to or upon delivery of a copy of the agreement the buyer is notified in writing that the agreement may be cancelled for:
> a) non-payment; or
> b) use of the item primarily for commercial purposes, unless the agreement so provides. . . ; or
> c) change in the buyer's residence beyond the disclosed service area, except where the buyer provides transportation or shipping to and from the site of service. . . .

GBL § 395-a(2).

Defendant contends, however, that this statute does not provide for a private right of action, and that any action implicating the prohibitions set forth in section 395-a violates the intent of the state Legislature to leave enforcement exclusively to the State's Attorney General.

---

[3] A "maintenance agreement" is defined in the statute as "any contract or representation whereby the seller or manufacturer of a retail sales item or the seller of a service contract shall offer the defined service and/or parts for an additional fee. Said maintenance agreement can be offered at the time of purchase or at a later date." GBL § 395-a(1).

5

Plaintiffs respond that a private right of action is not necessary under that section because although their claims ultimately rest on the prohibitions contained in section 395-a, the causes of action advanced in their complaint come under GBL §349 ("section 349") and breach of contract, both of which offer their own private rights of action. To evaluate these contentions, the Court begins by examining what causes of action are embodied in the language of section 395-a itself.

Section 395-a does not explicitly provide for a private right of action; in fact, the only mention of a remedy bestows enforcement of the statute on the State Attorney General:

> "A violation of the provisions of this section shall be punishable by a civil penalty of not more than three hundred dollars recoverable in an action by the attorney general in the name of the people of the state or by the corporation counsel for any city or by the appropriate attorney of any other political subdivision as shall be designated by the governing body of such political subdivision."

GBL § 395-a(4);

However, New York state courts have not addressed whether this particular law also carries an implied private right of action. Nevertheless, as discussed below, after applying state law standards to the question, this Court is of the opinion that no such implied right was contemplated by the Legislature in enacting the statute.

"When, as here, a statute does not provide an express private right of action, the courts will imply a private right of action only upon examination of the following three factors: '(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme'." *Ahmad v. Nassau Health Care Corp.*, 8 A.D.3d 512, 513 (2d Dep't 2004)(quoting *Sheehy v Big Flats Community Day*, 73 N.Y.2d 629, 633, 541 N.E.2d 18 (1989)).

6

As to the first factor, the text of section 395-a reveals that plaintiffs, as individual consumers, are within the class of persons that the Legislature intended to benefit. The statute protects the "buyer" from the early termination of any maintenance agreement "at the election of the party providing such parts and/or service," and specifically excludes "use of the item primarily for commercial purposes" from its protections. GBL § 395-a(b). Further, the recognition of a private right of action would seem to further the Legislature's purpose in protecting such buyers by providing a second means of enforcement.

However, the "most critical" factor in determining whether an implied private right of action lies within a given statute is whether such an action would create "unwarranted interference with the legislative scheme." *Hudes v. Vytra Health Plans Long Island*, 295 A.D.2d 788, 789 (N.Y. App. Div. 3d Dept 2002); *accord Brian Hoxie's Painting Co. v. Cato-Meridian Cent. School Dist.*, 76 N.Y.2d 207, 212, 556 N.E.2d 1087 (1990). On this point, the statute expressly sets forth an enforcement scheme through the State Attorney General, without defining a similar remedy by private persons in a civil suit. GBL § 395-a(4), *supra*. Notably, other sections of GBL Article 26, where section 395-a is found, explicitly provides for a private right of action where one is intended. *See, e.g.,* GBL § 390. Further, section 349 of the GBL, the statutory vehicle for one of plaintiffs' causes of action in this suit, was initially enacted to provide only for enforcement by the Attorney General. The Legislature amended the Law in 1980 to add a private cause of action and "expand enforcement authority beyond the Attorney General and thereby ensure more optimal protection of the public." *City of New York v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 621, 911 N.E.2d 834 (2009); *see id. at 629* ("When considering similarly comprehensive enforcement schemes, we have declined to imply a private right of action.").

Given that the Legislature has explicitly provided for private rights of action in other

sections of Article 26, and found it necessary to amend Article 22-A (section 349) where the statute provided only for enforcement by the Attorney General, the Court concludes that reading an implied right of action into section 395-a would not comport with the Legislative scheme of that statute. *See Varela v. Investors Ins. Holding Corp.*, 81 N.Y.2d 958, 961, 615 N.E.2d 218 (1993)(declining to find an implied private right of action in Article 29-H of the GBL, which authorizes only the Attorney General or a District Attorney to enforce its provisions, in light of the Legislature's decision to amend Article 22-A to expressly provide for a private cause of action).

This Court therefore does not find section 395-a to include an implied private right of action, and continues next to determine the propriety of using section 349 and breach of contract claims as a vehicles to allege violations under section 395-a.

### III. BREACH OF CONTRACT

A breach of contract claim under New York law requires the plaintiff to allege: "(1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach." *RCN Telecom Services, Inc. v. 202 Centre Street Realty LLC*, 156 Fed. Appx. 349 (2d Cir. Nov. 17, 2005) (Summary Order) (citing *Marks v. New York Univ.*, 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999); *accord First Investors Corp. Liberty Mut. Ins. Co.*, 152 F.3d 162 (2d Cir. 1998).

At the outset, defendant argues that it conformed with the express conditions of the contract, which both parties were aware of and bargained for at the time they entered the agreement, *viz.*, in the event that the store of purchase goes out of business, defendant will refund the contract holder the original purchase price. (D's Memo at 12-13.) Plaintiffs' breach of

contract claim, however, operates from the premise that the store closure provision is unenforceable. According to the complaint, section 395-a "forms a part of every maintenance agreement sold in New York," and thus the store closure provision, which is purportedly barred by section 395-a, is "ineffective and not a part of the agreement." (Compl. ¶¶ 34-35.) Therefore, by refusing to honor plaintiffs' claims based on the store closure provision, defendant allegedly breached the terms of the agreement. (Compl. ¶ 36.) Given that defendant performed on the facial terms of the agreement, the claim for breach, necessarily hinges on whether or not the store closure provision should be excised from the agreement.

Defendant responds that using section 395-a to void a contract provision cannot be done because it impermissibly creates a private right of action under a statute whose enforcement mechanism exists solely through New York's Attorney General. In support, defendant cites case law from this Circuit to argue for a broad proposition that "a statute without a private right of action may not be incorporated into a contract, or used as the basis for claiming that a failure to comply with the statute was a breach of contract." (D's Memo at 10.) Each of the Second Circuit cases cited by defendant, however, articulates a more narrow proposition than what defendant urges here. Though clearly barring actions for breach of contract which act to circumvent the lack of a private right of action in a *federal* statute, the cases to not address the analogous situation where state statutes are involved. *See Broder v. Cablevision Systems Corp.*, 418 F.3d 187, 198 (2d Cir. 2005)("[A] federal court should not strain to find in a contract a state-law right of action for violation of a federal law under which no private right of action exists."); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003)("Since . . . no private right of action exists under the [the federal Davis-Bacon Act], the plaintiffs' efforts to bring their claims as state common-law claims are clearly an impermissible 'end run' around [that statute]."); *see*

9

*also Gunther v. Capital One, N.A.*, 703 F. Supp. 2d 264, 270 (E.D.N.Y. 2010)(holding that reading provisions of the Truth in Savings Act, 12 U.S.C. §4301, *et seq.*, into a contract would "impermissibly undermine Congress's expressed intent that [the statute] be enforced by a regulatory agency and not private citizens"). Defendant does not cite, and the Court is unaware of, any case law applying such a bright line rule to New York statutes.

Plaintiffs argue that a private right of action under section 395-a is not needed to bring a contract claim to enforce the statute. They advance this argument by way of analogy to "numerous" New York statutes that "make unenforceable what would otherwise be defenses to common law claims for breach of contract or negligence." (Ps' Memo at 3.) Among the contractual clauses that these statutes purport to make unenforceable include: waiving the right to file liens (N.Y. Lien Law §34), certain disclaimers of liability for negligence (N.Y. Gen. Oblig. Law §§5-321 - 5-326), restrictions on certain retail installment contracts (N.Y. Pers. P. Law §403), illicit clauses in employment contracts (N.Y. Gen. Oblig. Law §5-301), and illicit clauses in agreements between spouses (N.Y. Gen. Oblig. Law §5-311). Plaintiffs further cite a number of cases in which these statutes are enforced by private parties in civil litigation "without the need for any private right of action under the prohibiting statute." (Ps' Memo at 4.)

These statutes, however, are distinguishable in at least one material respect from section 395-a. Each of the statutes cited by plaintiffs acts to void the improper clause found within the contract. Therefore, a breach of contract claim implicating these statutes operates from the premise that the cited statutes have already rendered the provision null and void. Section 395-a, by contrast, operates in an entirely different manner. Section 395-a states that "no maintenance agreement . . . shall be terminated" during the term of the contract except for the three reasons enumerated in the statute. In the event that the providing party does terminate the agreement for

an improper reason, 395-a does not void any portion of that contract. Rather, it leaves it to the State's Attorney General to police such infractions.

The Court's inquiry, therefore, must look to other state statutes more in line with the character of public enforcement embodied by section 395-a. For example, in *P&T Iron Works v. Talisman Contracting Co.*, 18 A.D. 3d 527 (2d Dep't. 2005), the Second Department considered a defendant's affirmative defense alleging plaintiff had not paid its employees a prevailing wage in accordance with N.Y. Labor Law § 220, which does not provide a private right of action until after an administrative action has been resolved. Allowing such a defense, the court held, would give effect to a cause of action not contemplated by the statute. *Id.* at 529.

However, in *Goldman v. Simon Property Group, Inc.*, 58 A.D. 3d 208 (2d Dep't. 2008), the Second Department allowed breach of contract claims to proceed that incorporated violations of GBL § 396-i – a statute with no private right of action. The plaintiff in *Goldman* alleged that the notice to the consumer regarding monthly dormancy fees deducted from electronic store gift cards was printed in font smaller than that specified in N.Y. CPLR 4544 and too small to be considered "clear[] and conspicuous[]" as required by N.Y. Gen. Bus. Law 396-i. *Goldman*, 58 A.D. 3d at 218. The breach of contract claim in that case arose solely from the defendant's failure to properly disclose the dormancy fees – the very same conduct prohibited by GBL 396-i – yet the statute's lack of a private right of action did not deter the court from recognizing a breach of contract claim based on conduct prohibited by that statute. The court's decision, however, did not directly address the inherent tension between plaintiff's breach of contract claim and the lack of a private right of action under 396-i. Arguably, the court's decision to allow the breach of contract claim to proceed in *Goldman* could have been based solely on N.Y. CPLR 4544, which prohibits receiving into evidence any portion of a contract involving a consumer

11

where the print is smaller than eight-point font. The court's decision specifically found that procedural rule applicable to plaintiff's claims. *Goldman*, 598 A.D.3d at 219-20; *see Sims v. First Consumers National Bank*, 303 A.D.2d 288 (1st Dep't 2003) (holding that plaintiff's breach of contract and section 349 claim regarding the disclosure of credit card fees did not require a distinct private right of action under N.Y. CPLR 4544 to invoke that statute).

What is important to note about the Appellate Division's treatment of section 396-i in *Goldman* is that the statute did not act as an exclusive remedy for such violations so as to preempt otherwise viable claims under common law. As the Second Department stated in a similar case to *Goldman*, "it is a fundamental tenet of statutory construction that the Legislature is presumed to be aware of the law in existence at the time of an enactment and to have abrogated the common law only to the extent that the clear import of the language of the statute requires." *Llanos v. Shell Oil Co.*, 55 A.D.3d 796, 798 (2d Dep't. 2008)(citing *B & F Bldg. Corp. v. Liebig*, 76 NY2d 689, 564 NE2d 650 (1990)). "Nothing in the clear import of the language of [section 396-i] requires a conclusion that the Legislature intended to abrogate any common-law remedy arising from alleged deceptive or improper practices concerning gift certificates or cards." *Llanos*, 55 A.D.3d at 798.

However, in a subsequent ruling, the New York Court of Appeals gave more texture to the type of approach the Second Department took in *Goldman* and *Llanos*, albeit in a slightly different statutory context. In *Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. Partnership*, 12 N.Y.3d 236, 244, 906 N.E.2d 1049 (2009), the court addressed common law causes of action that involved conduct prohibited by the Martin Act, GBL §§ 352 and 353, New York's blue sky laws. The State Attorney General has exclusive domain over the enforcement of the Martin Act, and no implied private right of action has been found under that Act. *Kerusa*, 12 N.Y.3d at 244;

*Vermeer Owners v. Guterman*, 78 NY2d 1114, 585 NE2d 377 (1991). Nevertheless, generally, where a common law action alleges conduct otherwise prohibited by the Martin Act (*e.g.* fraudulent or deceitful acts involving securities), courts do not read the Act to preempt automatically those common law claims. Instead, courts apply an "artful pleading" rule, whose ultimate purpose is to prevent an end run around the statute's exclusive enforcement provisions. *See, e.g., Whitehall Tenants Corp. v. Estate of Olnick*, 213 A.D.2d 200 (1st Dep't 1995)("[P]rivate plaintiffs will not be permitted through artful pleading to press any claim based on the sort of wrong given over to the Attorney-General under the Martin Act."). For example, under the Martin Act, the Attorney General need not prove scienter, but a plaintiff bringing a common law fraud claim does. Therefore, any common law fraud claim, which through "artful pleading" simply cites to the Martin Act to avoid having to plead an element of the common law claim itself – such as reliance or intent to defraud – is therefore barred. *See id.*; *see also Caboara v. Babylon Cove Development, LLC*, 54 A.D. 3d 79 (2d Dept. 2008)("The general rule is and long has been that 'when the common law gives a remedy, and another remedy is provided by statute, the latter is cumulative, unless made exclusive by the statute.'")(quoting *Burns Jackson Miller Summit & Spitzer v. Linder*, 59 NY2d 314, 324, 451 NE2d 459 (1983)).

*Kerusa* puts an even finer point on this approach. Where a common law claim would not lie but for the existence of a cited requirement in the Martin Act, such a claim may not proceed. In *Kerusa*, the state's high court reviewed an action for common law fraud involving the construction and design defects in a 42-story high rise. The complaint alleged that the defendants failed to make disclosures in the offering plan that would not otherwise be required outside the Martin Act or its implementing regulations. The court held that because plaintiff's "cause of action for fraud relies entirely on alleged omissions from filings required by the Martin

13

Act and the Attorney General's implementing regulations," it did not matter that the plaintiff alleged the elements of common law fraud. *Id.* at 247. In the court's words, alleging "the elements of common-law fraud does not transmute a prohibited private cause of action to enforce Martin Act disclosure requirements into an independent common-law tort." *Id.*

Plaintiffs' allegations here are materially similar to *Kerusa*, though admittedly based on a different statute and a different common law cause of action. Plaintiffs have alleged all of the elements required of a breach of contract claim, *viz.*, a contract, performance by the party seeking recovery, non-performance by the other party, and damages attributable to the breach. *Marks*, 61 F. Supp. 2d at 88. However, as with *Kerusa*, plaintiffs' common law claim relies *entirely* on incorporating the requirements of a statute with no private right of action. The store closure provision was included in the contract at the time of signing and plaintiffs presumably considered this as a bargained-for component of the agreement. Therefore, if section 395-a is not incorporated into the contract, and thereby does not invalidate the store closure provision, there is otherwise no breach. Plaintiffs' claim therefore is precisely the form of "artful pleading" discussed above that state courts have identified as making an impermissible end run around statutes with no private right of action.

One may argue that the Second Department's approach in *Goldman* and *Llanos*, in statutory terms at least, is more analogous to the instant case than *Kerusa* because, like here, those cases involved breach of contract claims that incorporated sections of the GBL with no private right of action. However, *Kerusa*, which was decided by New York's highest court after *Goldman* and *Llanos*, speaks more to the particular nature of plaintiffs' present claim, which advances common law cause of action relying exclusively on the prohibitions found in a statute with no private right of action. Plaintiffs here do not advance a claim that would otherwise have

14

been available under common law before the enactment of section 395-a. Thus, there is not the same concern expressed by the court in *Llanos* that the lack of a private right of action in a given statute should not act to abrogate an existing right of action under common law. *See Llanos*, 55 A.D.3d at 798. The Court therefore finds the subsequent approach by the New York Court of Appeals to be more applicable and instructive for present purposes. *See Broder*, 418 F.3d at 199-200 ("As a federal court applying state law, we are generally obliged to follow the state law decisions of state intermediate appellate courts . . . in the absence of any contrary New York authority or other persuasive data establishing that the highest court of the state would decide otherwise."(internal quotes and brackets omitted)(quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940), and *Pentech Int'l, Inc. v. Wall St. Clearing Co.*, 983 F.2d 441, 445 (2d Cir. 1993))).

Accordingly, the Court grants defendant's motion to dismiss plaintiffs' breach of contract claim.

### IV.  SECTION 349

Plaintiffs' second cause of action arises under section 349, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service . . . [including] "all deceptive acts or practices declared to be unlawful . . . ." GBL §349(a). To state a claim under section 349, a plaintiff must allege that "(1) defendant has engaged in an act or practice that is deceptive or misleading in a material way, and (2) plaintiff has been injured by reason thereof." *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 636 (2nd Cir. 1996). Deceptive acts and practices require a showing that a consumer, acting reasonably under the circumstances, would have been misled by the defendant's conduct.

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26, 647 N.E.2d 741, 623 N.Y.S.2d 529 (1995).

Plaintiffs' section 349 claims are on different footing than their breach of contract claims vis-à-vis the Second Circuit's holdings. The Circuit has made clear that section 349 claims premised on the violation of a state statute with no private right of action are not viable. In *Conboy*, 241 F.3d 242, plaintiffs brought a section 349 claim alleging that defendants had violated GBL § 601 ("section 601"), which prohibits creditors from contacting "the debtor or any member of his family or household with such frequency or at such unusual hours or in such a manner as can reasonably be expected to abuse or harass the debtor." *Conboy*, 241 F.3d at 257-58; GBL § 601(6)). Because section 601 does not provide a private right of action, the Circuit held, "[p]laintiffs cannot circumvent this result by claiming that a Section 601 violation is actionable under Section 349." *Conboy*, 241 F.3d at 258. "The Legislature, by creating a private right of action to enforce Section 349, clearly did not intend to authorize private enforcement of Section 601, especially where Section 601 contains its own enforcement provision which explicitly dictates who can enforce that section." *Id.* (quoting *Conboy v. AT&T Corp.*, 84 F. Supp. 2d 492, 506 (S.D.N.Y. 2000)).

Subsequently, in *Broder,* 418 F.3d 187, plaintiffs brought a class action alleging violations of laws concerning the structure and disclosure of rates for television cable services under 47 U.S.C. 543(d), and New York Public Service Law §224-a(4) respectively – neither of which provides a private right of action. *Id.* at 199-200. The Circuit's holding reiterated its prior conclusion in *Conboy*, that "a plaintiff cannot circumvent the lack of a private right of action for violation of a New York state law by pleading his claim under [section 349]." *Id.* at 199. Here, plaintiffs have attempted to do just that, *viz.*, circumvent the lack of a private right of action for

16

violation of a New York state law, namely section 395-a, by using section 349 as the vehicle for that claim. The Circuit has made clear that this is not a permissible cause of action.

*Conboy*, however, is distinguishable in some manner from the case here. The plaintiffs in *Conboy*, for example, alleged that a violation of section 601, "necessarily constitute[d] a deceptive act under Section 349," *Conboy*, 241 F.3d at 258, even though section 601 does not involve inherently deceptive acts. The Circuit in *Conboy* dismissed the claim on the additional ground that the plaintiffs failed to allege how the defendants' violation of that statute was materially deceptive.

By contrast, plaintiffs here at least articulate a theory as to why defendant's conduct was purportedly deceptive, namely, that by including the store closure provision, defendant misled plaintiffs into thinking that such a provision was not impermissible under the state's consumer laws. Furthermore, there are a number of state cases where section 349 claims are permitted for conduct that violates a statute with no private right of action. *See, e.g Llanos*, 55 A.D.3d 796; *Lonner v. Simon Prop. Group, Inc.*, 57 A.D.3d 100 (2d Dep't 2008). Nevertheless, the Circuit in *Conboy* clearly found objectionable a section 349 claim that would circumvent the intended operation of a statute, as here, which "authorizes only the Attorney-General or a District Attorney to commence an action for violation of its provisions." *Conboy*, 241 F.3d at 258.

Furthermore, this Court finds the New York Court of Appeal's approach to common law causes of action in *Kerusa* both applicable and helpful in evaluating plaintiffs' section 349 claim here. As with plaintiffs' breach of contract claim, the section 349 claim also relies "entirely" on the prohibitions of section 395-a. The contract between the parties was not facially deceptive. In other words, plaintiffs do not dispute that the contract they signed informed them that defendant would refund the cost of the agreement in the event that the retail store went out of business.

Rather, the deception alleged necessarily requires reading section 395-a into the contract. Therefore, giving import to section 395-a's lack of a private right of action does not abrogate an otherwise viable claim under section 349.

The Circuit took a nearly identical tack in its approach to the 349 claim in *Broder*. There, the plaintiff cited language in the underlying statute stating that "[n]othing in this subdivision shall be construed to impair, alter, limit, modify, enlarge, abrogate or restrict any right granted by statutory or common law to the attorney general or any other person." *Broder*, 418 F.3d at 200 (citing N.Y. Pub. Serv. Law § 224-a(7)(c)). Undeterred by this disclaimer, the Circuit noted that the plaintiff's section 349 claim was "asserting a private right of action for violation of [that statute], rather than to assert rights that would exist independently of [the statute] and could therefore be preserved by [the disclaiming language]." *Id.*

As there is no distinct and independent cause of action under section 349 without incorporating section 395-a, and based on the reasoning of the New York Court of Appeals in *Kerusa* as well as the Second Circuit's decisions in *Conboy* and *Broder*, the Court finds plaintiffs' section 349 claim to be an impermissible end run around section 395-a's lack of a private right of action. The Court therefore grants defendant's motion to dismiss plaintiffs' section 349 claim.

## CONCLUSION

For the above reasons, defendant's motion to dismiss the complaint is granted and the amended complaint is dismissed. The Clerk of Court is directed to close this case.

SO ORDERED.


Dated: Central Islip, N.Y.
       September 23, 2011                                                /s
                                                                              Denis R. Hurley
                                                                              United States District Judge